UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Cynthia S. Hennessy, | ) |
| Plaintiff, | ) Cause Number: |
| v. | ) |
| TransUnion, | ) |
| Defendant. | ) Plaintiff demands trial by jury |

## Complaint

NOW COMES the Plaintiff, Cynthia S. Hennessy (hereinafter referred to as Plaintiff) by and through her counsel, The Law Offices of Albert F. Ferolie, P.C. and complaining of the Defendant, TransUnion (hereinafter referred to as the Defendant), and states as follows:

### JURISDICTION AND VENUE

1. That this suit is brought and jurisdiction lies pursuant to 28 U.S.C. §§1337 and 1343(4) and 42 U.S.C §2000e-5(f). This is an action authorized and instituted pursuant to the American's with Disabilities Act of 1990, as amended (hereinafter referred to as the ADA) and pursuant to Title VII of the Civil Rights Act of 1964, as amended (hereinafter referred to as Title VII);

2. That all acts of discrimination alleged herein were committed within the Northern District of Illinois and venue is proper within this District and Division pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1391;

## PARTIES

3. That Plaintiff is a female citizen of the United States and the State of Illinois, and at all times relevant to this complaint, was a resident of Bolingbrook, Illinois, DuPage County, Illinois;

4. That Defendant is an American consumer credit reporting company, headquartered in Chicago, 555 W. Adams Street, Chicago, Illinois, 60661;

5. That at all times relevant in this complaint, Plaintiff was an "employee" of Defendant within the meaning of the ADA and Title VII and was employed as an Analyst;

6. That the Plaintiff began her employment with the Defendant on or about July, 1998 and was wrongfully terminated from the Defendant on or about May 14th, 2018;

7. That at all times relevant in this complaint, Defendant was an "employer" as that term is defined under the ADA and Title VII;

## ADMINISTRATIVE PROCEDURES

8. That on or about October 24th, 2018, Plaintiff timely filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (hereinafter the "EEOC"), Charge Number 440-2018-05488. A copy of the charge is attached and incorporated herein as Exhibit A.

9. That on or about November 28th, 2018, Plaintiff was issued a "Dismissal and Notice of Rights" from the EEOC for Charge Number 440-2018-05488, entitling her to commence action within ninety (90) days of her receipt of said Notice, a copy of which is attached hereto and incorporated by reference as Exhibit B.

10. That the Complaint and Request for Jury Trial in this matter was filed within ninety (90) days of receipt of the aforementioned EEOC Dismissal and Notice of Rights letter.

## FACTS COMMON TO ALL COUNTS

11. That in July, 1998, Plaintiff became employed by the Defendant as an Administrative Assistant and in June of 2012, was an Analyst in the Chicago office headquarters;

12. That in 1992, Plaintiff started getting Migraines and was diagnosed with Chronic Migraines in 2015, a condition and diagnosis that persists to present;

13. That said medical condition/diagnoses is recognized as a "disability" under the ADA;

14. That Plaintiff's employer first became aware of said medical condition in 2011 when Dr. Jacqueline Ambrose (Plaintiff's family doctor) requested the Plaintiff to be allowed intermittent leave;

15. That beginning in 2013, Plaintiff along with other Analysts were allowed to work remotely from home, 2 days of a 5 day work week;

16. That Prior to March of 2016, Plaintiff informed her manager Ian Rawn and Senior Lead Dorlia Manning that her migraines were increasing due to perfume and cologne and requested to work from home more often;

17. That Rawn informed Plaintiff that he did not believe in working from home and therefore denied Plaintiff's request to work from home additional days unless Plaintiff sent in proof of her disability;

18. That Plaintiff asked Rawn if her 2 other male co-workers, who were working from home full time, had to provide proof as to why they were working from home;

19. That Rawn refused to answer Plaintiff and just told her that he did not believe in working from home more than 2 days a week;

20. That on March 31st, 2016, the Plaintiff made a request for a reasonable accommodation to work from home 3 days a week;

21. That said request was made through her treating physician and for the purposes of lessening "triggers" which can escalate and/or cause the onset of migraines;

22. That said request was submitted through Matrix, the short term disability provider for Defendant and pursuant to Defendant's protocol for making such a request;

4

23. That Matrix approved Plaintiff's request for working from home 3+ days a week, on or about March 31st, 2016 and provided that information to Defendant's HR Department;

24. That Defendant failed to approve the 3 day WFH ("work from home") that Plaintiff had been approved for on March 31, 2016, and did not approve it until April 19, 2016;

25. That during that time, Plaintiff endured a number of migraines, while still coming into the office 2 days a week, but having to leave due to the trigger mechanisms at the work place;

26. That Plaintiff complained to Matrix as to why she had not received the requested 3rd day WFH and was informed that Matrix had approved it on March 31st, 2016;

27. That Plaintiff contacted Defendant and spoke with her HR Rep, LaDrya Gevin and asked why she was not told this weeks earlier;

28. That Plaintiff was told by Gevin that Gevin and Rawn were both trying to figure out if Plaintiff was, "playing the system" and because of this, they purposefully stayed the implementation of her 3rd home day work request;

29. That subsequent to this, Plaintiff was granted and participated in the 3 WFH days, however Rawn, Plaintiff's Manager, said he did not approve her to take any additional days off, regardless of whether she had a migraine or not;

30. That several weeks after this, Rawn accused Plaintiff of not working her full work hours on days when she was not in the office;

31. That Plaintiff corrected him and stated that he she was making that time up and that was allowable under the terms of her accommodation as long as she made up the time;

32. That Plaintiff contacted the Defendant's Compliance Department and complained that she was being discriminated against in 2016;

33. That beginning June 2016, Plaintiff was allowed to work full time from home;

34. That again Rawn questioned Plaintiff's motive and denied her temporary request for time off due to medical reasons;

35. That upon returning from leave, in February 2017, Plaintiff received her first negative work review, which included denying her a raise;

36. That again, Plaintiff complained to Ann Layden, Defendant's HR head, stating that she was being retaliated against because of her disability;

37. That in February of 2017, Plaintiff's immediate manager, Dorlia Manning, when asked by Plaintiff if she should let her know about when she (Plaintiff) had low level migraines, stated that she did not need to know that information;

38. That in February of 2017, since Plaintiff was working full time from home (WFH) she was supposed to qualify for 100% internet reimbursement per month as a policy of the Defendant;

39. That when she requested the full reimbursement, she was denied by her manager, stating that she (Manning) had talked to "HR" and that Plaintiff was NOT entitled to said 100% reimbursement because she had "asked" to be a WFH employee;

40. That Plaintiff requested the name of the person her manager talked with from HR but her manager reused to provide her with that information;

41. That Plaintiff again complained to Compliance that this was discrimination and in violation of the ADA and Compliance confirmed that her manager did NOT reach out to them or HR and that Plaintiff was entitled to 100% reimbursement;

42. That subsequent to this, Rawn consistently interpreted Plaintiff in meetings, would not allow her to answer questions and otherwise treated her in a demeaning and hostile manner;

43. That her Team Leader, Manning, during this same time frame, would consistently and purposefully not answer direct questions posed by Plaintiff however, if another colleague asked similar questions, she would provide detailed answers;

44. That the aforementioned conduct by Rawn and Manning referenced in paragraphs 42 and 43 herein was committed against the Plaintiff on a regular and frequent basis up to and including the date of Plaintiff's termination, May 14th, 2018;

45. That on March 5th, 2018, Plaintiff was on a pre-approved vacation and while on said vacation, experienced a severe migraine, requiring heavy medication as treatment;

46. That Plaintiff received a work related call at 7pm and logged in, but was unable to successfully log into an additional program in order to research the issue. Plaintiff reached out to Manning, via instant messaging and informed Manning that she was unable to log into SPLUNK due to getting locked out;

47. That Manning directed her to "open a new ticket regarding being locked out of the system" and deal with it "tomorrow";

7

48. That Plaintiff did as instructed and reached out to the Gloria Menta (First level support requesting that she transfer the ticket to the next level). She then emailed both Rawn and Manning about not being able to handle the ticket due to being locked out, but that she had requested first level to transfer it to the next level for proper handling. She also explained that she had a severe migraine and had taken the strongest medication she had (a valium) to kill the pain;

49. That the following day, Plaintiff was called to attend a meeting and was reprimanded for not calling her supervisors. She reminded them that she was on vacation, had a migraine, took heavy meds, got locked out, informed Manning via Internal Messenger, requested 1st level to transfer the ticket and that the ticket was a glitch (meaning not one customer was down, therefore Defendant did not lose any money);

50. That same week, two other co-workers (Mudrak and Bidnick) had the exact same experience regarding 2 urgent tickets they were called upon to handle and took the exact same action as Plaintiff;

51. That Mudrak and Bidnick were required to attend a meeting and were reprimanded for not contacting their superiors via a phone call;

52. That Plaintiff received a written, final disciplinary write up for this conduct, however, the other two co-workers did not and furthermore, Plaintiff's warning was a first "Final Written Warning";

53. That neither of the other two co-workers had a disability as defined under the ADA and neither had previously requested an accommodation pursuant to said disability leading Plaintiff again to contact HR and complain about the discriminatory

8

treatment she received by being the only one of the three who was disciplined for the exact same conduct;

54. That Plaintiff reached out to upper management including Compliance, HR and Rawn's boss and pleaded for someone to stop the retaliation;

55. Nicole Wallace (HR Advisor) called Plaintiff and said she was assigned to investigate the issue and was informed by Wallace that someone had informed Rawn about her complaint and Wallace admitted to informing Rawn and getting his side of the story even before reaching out to the Plaintiff;

56. That Plaintiff requested that Wallace interview her co-workers to confirm how she was being mistreated and that both Bidnick and Mudrak both had similar tickets but were not written up;

57. That HR closed out the investigation a week later without any finding, Upon further questioning, Plaintiff asked Wallace how could she close the case when her team mates have seen for themselves how Plaintiff had been mistreated. She informed Plaintiff that she did not ask her co-workers if they felt Plaintiff was being discriminated/retaliated against. She never informed Plaintiff if she asked Mudrak and Bidnick about the similarities in the tickets and why they were NOT disciplined for handling their tickets incorrectly the same way the Plaintiff was;

58. That the Plaintiff contacted John Blenke (CEO of Compliance for Defendant) and lodged a complaint;

59. That no one responded to her regarding that complaint;

60. That after several set dates for meetings with Manning about her performance, which were all canceled by Defendant, on or about May 2nd, she met with Manning and was told that she was doing much better;

61. That on May 14th, 2018, Plaintiff was officially terminated by Manning because she (Plaintiff), "did not show any signs of improvement and continued to provide the wrong answers";

62. That on the same day that the Defendant terminated Plaintiff, she was given paper work that indicated the last day of her pay period would be May 14th, 2018;

63. That as a result, Plaintiff had deducted out of her check about $200 for insurance payment for the remaining part of May;

64. That according to Blue Cross/Blue Shield, Defendant and Plaintiff's insurance carrier, acknowledged that Plaintiff's medical insurance was in place and she was covered on the days she called in to verify (May 15, 2017 – May 27, 2017);

65. That Plaintiff in reliance on that made a series of medical appointments for herself and her family;

66. That subsequent to making those appointments and attending those healthcare visits, Defendant contacted Blue Cross/Blue Shield on or about May 27th, 2018 and informed them to cancel any medical bills incurred by Plaintiff, retroactive to May 14th, 2018, thereby leaving Plaintiff with thousands of dollars of medical bills because Blue Cross/Blue Shield refused to cover them due to Defendant's instructions, even though Plaintiff's last pay check had about $200 deducted from it for coverage;

# FEDERAL CLAIMS

## Retaliation
## American's With Disabilities Act
## Title VII
## Count I

67. That beginning in 2016 and continuing up to and including the termination of Plaintiff on May 14th, 2018, the Plaintiff was retaliated for requesting "reasonable accommodations" pursuant to the ADA; for having been diagnosed and suffering from chronic migraines; and for making repeated complaints of discrimination and violations of the ADA to Defendant's HR and Compliance Departments and Title VII, in the following manner:

a) purposefully delaying the implementation of a third day off work request as stated in paragraphs 15-26 herein;
b) discriminated against her by sex by refusing to let her work from home as stated in paragraphs 17-19, herein;
b) being accused of "playing the system" in regards to requesting a reasonable accommodation pursuant to the ADA as stated in paragraphs 27-29, herein;
c) by being instructed by her manager that she could not take any additional Work From Home days after she was granted the 3rd day work from home even if she had migraine as stated in paragraphs 29-30, herein;
d) by being falsely accused of not working her full hours as stated in paragraphs 30-36, herein;
e) by receiving a negative review and being denied a raise as stated in paragraphs 33-36, herein;
f) by her manager NOT wanting to know about her low level migraines as stated in paragraph 37, herein;
g) by her manager questioning her motives for working from home full time and denying her temporary time off for medical reasons as stated in paragraph 34, herein;
g) by purposefully being mislead and given wrong information about being reimbursed at 100% regarding her internet use as stated in paragraphs 38-41, herein;
h) by her manager refusing to give her the name of the HR representative as stated in paragraphs 40, herein;

11

e) by her managers consistently interrupting Plaintiff in phone meetings, not allowing her to answer questions, not answering her questions, answers other co-workers questions and otherwise treated her in a demeaning and hostile manner as stated in paragraphs 42-44, herein;

f) by being given wrong instructors on how to handle tickets as stated in paragraphs 45-62, herein;

g) by being the only Analyst out of three, who all committed the same conduct, that was disciplined with a written warning as stated in paragraphs 44-62, herein;

h) by being given a Final Written Warning as her first disciplinary warning in her work history as stated in paragraphs 45-62, herein;

68. That on May 14th, 2018, the Defendant purposefully terminated the Plaintiff from her position for the pre-textual and false reasons that, "she did not show any signs of improvement and continued to provide wrong answers", when the actual reason for termination was in retaliation for Plaintiff requesting a reasonable accommodation pursuant to the ADA of working from home for 3 days a week and then 5 days a week, based on her medical disability and because she had a disability;

69. That by the conduct described hereinabove, the Defendant has willfully and intentionally, with malice or reckless disregard of the Plaintiff's rights as an employee, engaged in unlawful and discriminatory employment practices by failing to allow a "reasonable accommodation" of working from home for 3 days a week then 5 days a week; retaliating against the Plaintiff for requesting said reasonable accommodation; and retaliated against Plaintiff for her continual complaints to HR and Compliance regarding what she perceived as discriminatory conduct by her managers and supervisors due to her disability of chronic migraines in violation of the ADA;

70. That by the conduct described hereinabove, the Defendant has willfully and intentionally, with malice or reckless disregard of the Plaintiff's rights as an

employee, engaged in unlawful and discriminatory employment practices in terminating Plaintiff from her positon as an Analyst due to her disability and in retaliation for her requests for accommodations and complaints of alleged discriminatory conduct against her by the Defendant and in violation of the ADA;

71. That as a direct and proximate result of the aforementioned wrongful and discriminatory practices performed by the Defendant, by and through its duly authorized agents, servants and or employees, Plaintiff has suffered and continues to suffer lost wages, lost benefits and other pecuniary damages;

72. That as a direct and proximate result of the aforementioned wrongful and discriminatory practices performed by the Defendant, by and through its duly authorized agents, servants and or employees, Plaintiff has experienced substantial damages for mental anguish, emotional distress, loss of enjoyment of life, and other nonpecuniary losses;

WHEREFORE, the Plaintiff, Cynthia Hennessy, requests judgment of this Court against the Defendant, TransUnion, as follows:

A. Award the Plaintiff compensatory damages, including pecuniary and non-pecuniary damages in an amount to be determined at the trial of this matter;

B. Award the Plaintiff his attorney fees, including litigation expenses and the costs of this action;

C. Award the Plaintiff punitive damages in an amount to be determined at the trial in this matter;

D. Grant such other relief as may be just and proper.

## STATE CLAIMS
## COUNT II
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1-66. That the aforementioned conduct described herein in paragraphs 1-58, committed by Defendant, by and through its agents, servants and/or employees and against the Plaintiff, were extreme and outrageous;

67. That Defendant, by and through its agents, servants and/or employees intended to inflict severe distress on Plaintiff and/or knew that their conduct would have a high probability of causing severe distress to Plaintiff;

68. That as a result of the aforementioned conduct by Defendant, by and through its agents, servants and/or employee, Plaintiff suffered migraines, nausea, severe distress, depression, anxiety, panic attacks, sleeplessness and other psychological and physiological ailments and infirmities.

WHEREFORE, the Plaintiff Cynthia Hennessy, by her attorneys, The Law Offices of Albert F. Ferolie, P.C., requests that this court enter judgment for compensatory and punitive damages in an amount in excess of $100,000.00 (ONE HUNDRED THOUSAND DOLLARS) against the Defendant, TransUnion and for whatever and further relief this court deems just.

## JURY REQUEST

The Plaintiff, Cynthia Hennessy, by his counsel, The Law Offices of Albert F. Ferolie, P.C., hereby requests a trial by jury on all issues hereinabove, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

The Law Offices of Albert F. Ferolie, P.C.

s/Albert F. Ferolie
Attorney for Plaintiff

THE LAW OFFICES OF ALBERT F. FEROLIE, P.C.
218 N. Jefferson Street
Suite 401
Chicago, IL. 60661
312-715-0255
ARDC #: 6197037

This form is affected by the Privacy Act of 1974; see enclosed Privacy Act Statement before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | [ ] FEPA | |
| | [X] EEOC | 440-2018-05488 |

**Illinois Department Of Human Rights** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Mrs. Cynthia S Hennessy | (312) 656-6399 | 1971 |

Street Address: 268 Green Mountain Drive, BOLINGBROOK, IL 60440

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| TRANSUNION | 501+ | (855) 681-3196 |

Street Address: 555 W. Adams Street, CHICAGO, IL 60661

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[X] RETALIATION [ ] AGE [X] DISABILITY [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 05-14-2018    Latest: 05-14-2018

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent in or around July 1998. My most recent position was Analyst. During my employment, I have been subjected to different terms and conditions of employment, including, but not limited to, harsher scrutiny. I have also requested a reasonable accommodation which was not provided within a reasonable time. Subsequently, I have been disciplined. On or about May 14, 2018, I was discharged.

I believe I have been discriminated against because of my disability, and in retaliation for engaging in a protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

I also believe I have been discriminated against because of my sex, female, and in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

Digitally signed by Cynthia Hennessy on 10-24-2018 05:36 PM EDT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

A

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## DISMISSAL AND NOTICE OF RIGHTS

**To:** Cynthia S. Hennessy
268 Green Mountain Drive
Bolingbrook, IL 60440

**From:** Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

**EEOC Charge No.:** 440-2018-05488

**EEOC Representative:** Michael Solomon, Investigator

**Telephone No.:** (312) 869-8097

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Julianne Bowman
Julianne Bowman,
District Director

11/28/18
(Date Mailed)

Enclosure(s)

cc: Chief Executive Officer
TRANSUNION CORP.
555 W. Adams Street
Chicago, IL 60661

2-26-19

B